UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TIFFANY HILL,

                Plaintiff,

v.                                          **DECISION AND ORDER**
                                                    07-CV-668S

KALEIDA HEALTH,

                Defendant.

## I. INTRODUCTION

Plaintiff commenced this action *pro se* by filing a Complaint in this Court, alleging that her former employer, Defendant Kaleida Health, discriminated against her on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the New York Human Rights Law, as codified in the N.Y. Exec. Law §§ 296 et seq. ("NYHRL"). Defendant has moved for summary judgment. Plaintiff opposes Defendant's motion. Plaintiff has also filed a motion to appoint counsel. For the reasons discussed below, Defendant's motion for summary judgment is granted, and Plaintiff's motion to appoint counsel is denied.

## II. BACKGROUND

### A. Facts

The following material facts are undisputed and taken from the parties' declarations,

1

affidavits, exhibits, and respective Local Rule 56.1 statements of facts.[1]

Kaleida Health ("Kaleida") is a not-for-profit health care provider. (Def.'s Statement, ¶ 1.[2]) Plaintiff Tiffany Hill ("Plaintiff"), an African-American woman, was first employed by Kaleida as a part-time Licensed Practical Nurse ("LPN") on August 14, 2000. (Docket No. 1, Pl. Compl., ¶ 4; Def.'s Statement, ¶ 27.)

On March 23, 2003, Kaleida promoted Plaintiff to the position of full-time Staff Nurse after Plaintiff obtained her Registered Nurse ("RN") certification. (Def.'s Statement, ¶ 28.) Plaintiff received an increase in pay as a result of the promotion. (Def.'s Statement, ¶ 28.)

On February 20, 2004, Plaintiff "bid" on an open RN Medical/Surgical position on 8 West at Millard Fillmore Gates Hospital ("8 West"). (Def.'s Statement, ¶ 30.) Eight West is an "acute medical/surgical floor." (Def.'s Statement, ¶ 35.) Additionally, a "bid" is how Kaleida employees apply for internal positions that are available within the organization. (Def.'s Statement, ¶¶ 25-26.) Article 42 of Kaleida's Collective Bargaining Agreement explains the bid process. (Def.'s Statement, ¶ 26.) Under this Article, priority is given to the most senior qualified applicant. (Def.'s Statement, ¶ 26.)

Plaintiff was the successful bidder for the position on 8 West, and began working there on March 22, 2004. (Def.'s Statement, ¶ 30.) But after 30 days on 8 West, Plaintiff exercised her right to return to her prior position as Staff Nurse in the Skilled Nursing Facility. (Def.'s Statement, ¶¶ 31, 35.)

---

[1] This Court will deem uncontroverted factual assertions admitted to the extent they are supported by the record evidence. See Local Rule 56.1(c) (statements of undisputed fact that are not controverted by the non-moving party are deemed admitted).

[2] Referring to Defendant's Statement of Undisputed Material Facts, which contains citations to the record evidence. (Docket No. 25.)

### *i.  Emergency Department Critical Care RN Position*

On May 21, 2004, Kaleida posted a position for a Critical Care RN in the Emergency Department at Millard Fillmore Gates Hospital. (Def.'s Statement, ¶ 32.) This position requires at least one year of clinical work experience as an RN in the acute medical/surgical field. (Def.'s Statement, ¶ 33.) Staff nursing in a Skilled Nursing Facility does not constitute acute medical/surgical experience. (Def.'s Statement, ¶ 34.)

In June 2004, Plaintiff bid on the posted position. (Def.'s Statement, ¶ 35.[3]) At the time, Plaintiff had one month of acute medical/surgery experience, from her employment on 8 West. (Def.'s Statement, ¶¶ 30, 35.)

Despite Plaintiff not having the necessary work experience, the Nurse Manager of the Emergency Department at Millard Fillmore Gates Hospital, Bunny O'Brien, interviewed Plaintiff for the position. (Def.'s Statement, ¶ 36.) O'Brien interviewed Plaintiff at the request of the Human Resources Department, which was assisting Plaintiff in bidding on available positions. (Def.'s Statement, ¶ 36.) O'Brien further stated that, in the past, she interviewed individuals for positions in the Emergency Department so that those individuals could "shadow" on the job, which allowed them to see what the job entailed, and gain an understanding for why medical/surgical experience was necessary. (Def.'s Statement, ¶ 36; O'Brien Aff., Docket No. 24, Pt. 3, ¶ 9.)

O'Brien scheduled Plaintiff to "shadow" the Emergency Department RN position, but Plaintiff did not report on the date of her scheduled shadow. (Def.'s Statement, ¶ 36.) Plaintiff did, however, report the following day, seeking to shadow. (Def.'s Statement, ¶

---

[3] At the time Plaintiff submitted her bid, two positions were available, but Plaintiff only applied for one of the available positions. (Def.'s Statement, ¶ 35.)

3

36.)

Defendant did not offer Plaintiff the position. (Def.'s Statement, ¶ 37.) Instead, Defendant offered the two available positions to Cynthia Baker and Adrienne Barth, both of whom had at least one year of work experience in the acute medical/surgical field. (Def.'s Statement, ¶ 38.) In fact, Baker had 18 years of critical care experience, and Barth previously worked in the Emergency Department on a part-time basis. (Def.'s Statement, ¶ 38; O'Brien Aff., ¶¶ 12-13.) Plaintiff concedes that both Baker and Barth were more qualified than she. (Def.'s Statement, ¶ 39.)

### ii. Other Bids on RN Positions

From April 22, 2004, through December 21, 2004, Plaintiff bid on 31 additional RN positions at Kaleida. (Def.'s Statement, ¶¶ 42, 46; Docket No. 25, Ex. AA.) Plaintiff did not meet the minimum requirements for 17 of the 31 available positions. (Def.'s Statement, ¶ 47.) Sixteen of the available positions required at least one year of acute medical/surgical experience. (Def.'s Statement, ¶ 47, parts a-c.; Docket No. 25, Ex. AA.) And Plaintiff's bid for the position of RN in a clinical setting required at least five years of experience as an RN in a clinical setting. (Def.'s Statement, ¶ 49, part d; Docket No. 25, Ex. Z.)

Additionally, two positions were never filled (Docket No. 25, Ex. AA[4]); one position, bid number 14207, was filled on the day Plaintiff submitted her bid (Def.'s Statement, ¶ 54); five positions were awarded to employees with greater seniority than Plaintiff (Docket No.

---

[4] Referring to bid positions numbered 13670 and 13865.

4

25, Ex. AA[5]); two positions were awarded to African-Americans (Docket No. 25, Ex. AA[6]); and one position, bid number 15260, was awarded to an "internal" applicant (Docket No. 25, Ex. AA[7]).

### iii.  Nurse Manager Position at Waterfront Health Care Center

In September 2004, Plaintiff applied for the position of Nurse Manager at the Waterfront Health Care Center ("WHCC"). (Def.'s Statement, ¶ 55.) WHCC is part of the Kaleida Health system. (Def.'s Statement, ¶ 1.) Plaintiff was awarded the position. (Def.'s Statement, ¶ 56.) The WHCC employee handbook contains a sick policy, which requires employees to notify WHCC if they are unable to work due to illness no later than two hours before their scheduled shift. (Def.'s Statement, ¶ 59.) The handbook further provides that absent employees who fail to notify WHCC about their absence will be suspended for the first violation. (Def.'s Statement, ¶ 59.) The second violation will result in termination. (Def.'s Statement, ¶ 59.) Plaintiff received a copy of the employee handbook. (Def.'s Statement, ¶ 58.)

On November 29, 2004, Plaintiff resigned from her position as Nurse Manager. (Def.'s Statement, ¶ 59.) Plaintiff, however, remained with WHCC, electing to become a per diem RN. (Def.'s Statement, ¶ 60.)

---

[5] Referring to bid positions numbered 12133, 14224, 14932, 15351, and 15367.

[6] Referring to bid positions numbered 14851 and 15221.

[7] Under Kaleida's Collective Bargaining Agreement, priority is given to "internal" applicants. (Docket No. 25, Ex. J., p. 17.) An applicant is considered "internal" if he or she works within the bargaining unit in which the vacancy exists. (Id.) But even if the applicant works within that bargaining unit, yet submits his or her bid 14 days after the date on which the opening is posted, the applicant will be considered external. (Id.) For bid position 15260, Plaintiff was considered an external applicant because she submitted her bid more than 14 days after the opening was posted. (Docket No. 25, Ex. AA.)

5

Following her resignation as Nurse Manager, Plaintiff was absent from work on three separate occasions and did not provide WHCC with advance notification. (Def.'s Statement, ¶ 63.) Specifically, Plaintiff was absent on February 19, March 4, and March 5, 2005. (Def.'s Statement, ¶ 63.) WHCC listed Plaintiff as a "No Call/No Show." (Def.'s Statement, ¶ 63.)

By letter dated March 8, 2005, Tosca Y. Martin, Director of Human Resources, notified Plaintiff that WHCC was terminating her employment due to her three unexcused absences. (Docket No. 25, Ex. Y.) Plaintiff's termination was effective immediately. (Docket No. 25, Ex. Y.)

**B.     Procedural History**

On July 20, 2005, Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR"), alleging that Defendant discriminated against her on the basis of her race by denying her RN positions and by terminating her employment, all in violation of the New York Human Rights Law, as codified in the N.Y. Exec. Law §§ 296 et seq. ("NYHRL"). (Def.'s Statement, ¶ 3; Pl. Compl., ¶ 9; Docket No. 25, Ex. A, ¶ 3.) On the same day, Plaintiff also filed charges with the Equal Employment Opportunity Commission ("EEOC"). (Pl. Compl., ¶ 10.)

On April 30, 2007, the DHR issued a "Determination and Order After Investigation" ("Order"). (Docket No. 25, Ex. C.) In the Order, the DHR found "no probable cause" to believe that a violation of the New York Human Rights law occurred. (Docket No. 25, Ex. C.) Plaintiff did not appeal the DHR's determination, nor did Plaintiff ask the EEOC to review the determination.

On July 9, 2007, the EEOC issued a notice of dismissal, "closing its file on [Plaintiff's]

6

charge" after it adopted the findings of the DHR. (Docket No. 25, Ex. D.) The EEOC also notified Plaintiff of her right to commence suit in federal or state court. (Docket No. 25, Ex. D.)

Plaintiff commenced this action on October 9, 2007. (Docket No. 1.) In her Complaint, Plaintiff alleges four separate claims of racial discrimination that are demonstrated by her: (1) termination of employment; (2) failure to be hired for available positions; (3) failure to be promoted; and (4) harassment, all in violation of Title VII and the NYHRL. (Pl. Compl., ¶ 13.[8])

Thereafter, Defendant moved for summary judgment. (Docket No. 24.[9]) By way of Scheduling Order dated January 9, 2009, this Court directed Plaintiff to respond to Defendant's Motion by February 27, 2009. (Docket No. 28.) This Court mailed Plaintiff a copy of the Scheduling Order to the address she provided the Court.

On January 20, 2009, the Court's Order was returned as undeliverable. This Court then issued another Scheduling Order directing Plaintiff to respond to Defendant's motion by March 4, 2009. (Docket No. 29.) Upon discovering that Plaintiff provided Defendant with a new address, but not the Court, this Court then mailed a copy of the Scheduling Order to Plaintiff at the address she provided Defendant. This Court also warned Plaintiff that it is her responsibility to keep the Court advised of her current address.

---

[8] Because Plaintiff does not state which of her four claims are set forth pursuant to Title VII, and which of her claims are brought under the NYHRL, this Court will address all four claims under both statutes.

[9] In support of the motion, Defendant filed the following documents: Local Rule 56.2 Statement to Pro Se Litigant Opposing Summary Judgment, the Affidavits of Bunny O'Brien, Susan Passmore, Russ Santucci, Vicky Loretto, and Robert C. Weissflach, Local Rule 56.1 Statement of Undisputed Material Facts, numerous exhibits, and a memorandum of law in support of its motion and in reply to Plaintiff's response. (Docket Nos. 24-26 & 33.)

Plaintiff, however, did not respond to Defendant's motion by March 4, 2009. As a result, this Court issued a third Scheduling Order directing Plaintiff to file a response by July 31, 2009. (Docket No. 31.)

On July 31, 2009, Plaintiff file a memorandum of law (Docket No. 33), and moved for the appointment of counsel (Docket No. 32). Plaintiff did not file any affidavits, nor did she submit a statement of the material facts as to which she contends there exists a genuine issue to be tried. On August 31, 2009, Defendant filed a reply memorandum of law in support of summary judgment. (Docket No. 35.)

### III. DISCUSSION

**A.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26

L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

In the context of employment discrimination cases, the United States Court of Appeals for the Second Circuit has explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)). Nonetheless, "[t]he summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, the Second Circuit has noted that "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Id.

### B. Plaintiff's NYHRL Claims Are Barred

#### *i. Discriminatory Termination and Failure to Hire and Promote*

Defendant argues that Plaintiff's NYHRL claims for discriminatory termination and failure to hire and promote are barred by section 297(9) of the New York Executive Law.

9

(Def.'s Mem., p. 6.[10]) This statute provides, in relevant part, that:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . and such other remedies as may be appropriate . . . unless such person had filed a complaint hereunder or with any local commission on human rights.

N.Y. Exec. Law § 297(9).

"Section 297(9) deprives the district court of subject matter jurisdiction" because "[i]t is well-settled that if a litigant files a discrimination complaint with the DHR, she may not bring a subsequent judicial action based on the same incident." Benson v. North Shore-Long Island Jewish Health Sys., 482 F. Supp. 2d 320, 325 (E.D.N.Y. 2007) (citing York v. Ass'n of Bar of City of New York, 286 F.3d 122, 127 (2d Cir. 2002)); see also Moodie v. Federal Reserve Bank, 58 F.3d 879, 882 (2d Cir. 1995). After the DHR decides the claim, a litigant "may only appeal that decision to the Supreme Court of the State of New York." Benson, 482 F. Supp. 2d at 325. A litigant may only bring a subsequent judicial action if the complaint is dismissed for "administrative convenience." Moodie, 58 F.3d at 882 (2d Cir. 1995).

Here, Plaintiff filed a charge with the DHR, wherein she set forth three of the same claims she presently alleges in her Complaint. For instance, Plaintiff alleged in her DHR complaint that Defendant "refused [to consider her] for available jobs, "denied [her] the opportunity for regular employment," and was ultimately terminated "because of her race and color." (Docket No. 25, Ex. A, ¶¶ 2-3.) The DHR investigated Plaintiff's allegations, and subsequently issued a decision finding "no probable cause." (Docket No. 25, Ex. C.)

---

[10] Referring to Defendant's Memorandum of Law in support of its Motion for Summary Judgment. (Docket No. 26.)

Plaintiff did not appeal the DHR's decision to the New York State Supreme Court. Instead, Plaintiff commenced this suit, alleging that Defendant discriminated against her on the basis of her race by failing to promote her, failing to hire her, and discriminatorily terminating her. (Compl., ¶ 13.) Based on the well-settled authority cited above, this Court lacks subject-matter jurisdiction to entertain Plaintiff's NYHRL claims for discriminatory termination and failure to hire and promote.

### ii. *Plaintiff's NYHRL Claim For Harassment*

This is not the end of the analysis, however, because Plaintiff alleges in her Complaint that Defendant "harassed" her on the basis of unequal terms and conditions of her employment. (Compl., ¶ 13.) Although the Complaint does not allege the facts supporting her harassment claim, Plaintiff stated at her deposition that this claim is based upon the "preconceived notion" of her employers that she "couldn't get along with [her] co-workers," that she received seven write-ups in 2004, most of which were later expunged, and that her "LPN [] pay should have been more." (Pl. Dep., Docket No. 25, Ex. G, pp. 23-24, 123-125.[11]) Plaintiff claimed the 2004 write-ups also relate to her claim that she was discriminated against with regard to bidding for positions. (Pl. Dep., pp. 16-17, 28-30.) Defendant argues that Plaintiff's NYHRL harassment claim is barred. (Def.'s Mem., pp. 7-8.)

### a. *Plaintiff's Claim is Barred*

A "[c]laimant cannot avoid the jurisdictional bar [presented by § 297(9)] by merely adding additional elements of damage arising out of the same underlying conduct [or] by

---

[11] Plaintiff never explains why she was "written up."

changing his legal theory." Carroll v. U.P.S., 225 F.3d 645, 2000 WL 1185583, at *3 (2d Cir. 2000) (brackets in original) (citing Bhagalia v. State, 644 N.Y.S.2d 398, 399 (1996)). "[A]ttempts to recover for [the same] injuries under . . . slightly different labels' are subject to dismissal.'" Carroll, 2000 WL 1185583, at *3 (citing Horowitz v. Aetna Life Ins., 539 N.Y.S.2d 50, 52 (1989)). Essentially, "[t]he question is whether a sufficient identity of issue exists between the complaint before the division and the instant claim." Carroll, 2000 WL 1185583, at *3; see also Spoon v. American Agriculturalist, Inc., 478 N.Y.S.2d 174, 175 (1984) ("Facts emanat[ing] from a continuing process of alleged [discrimination] giv[e] rise to one claim, not several").

Here, this Court finds that Plaintiff's harassment claim is sufficiently identifiable with her DHR claims. At both the DHR and here, Plaintiff challenges the same things – Defendant's failure to hire and promote her, and its decision to terminate. The allegation relative to her employer's "preconceived notion" is not a new claim. The same allegation was presented to, and considered by, the DHR. (DHR Compl., ¶ 2.) Further, Plaintiff conceded at her deposition that the 2004 write ups relate to her barred failure to promote claim. Her belief that they also constitute harassment is not sufficient to state a new claim and avoid the bar. Plaintiff's reference to disparate LPN pay, which is not alleged in her Complaint, suggests discrimination, not harassment. All these facts relate to alleged discrimination in hiring, promotion, and termination. Thus, Plaintiff's attempt to label the conduct as harassment is not sufficient to avoid the bar.

. . .

In light of the foregoing, this Court finds that Defendant is entitled to judgment as a matter of law with respect to all of Plaintiff's NYHRL claims.

## C. Plaintiff's Title VII Claims

### *i. Standard for Discriminatory Termination and Failure to Hire and Promote*

When analyzing a case of discriminatory termination and failure to hire and promote under Title VII, courts apply a "burden-shifting" analysis first set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).

Under this framework, the plaintiff must first establish a prima facie case of discrimination under the statute by a preponderance of the evidence. See McDonnell Douglas, 411 U.S. at 802. "The burden of establishing a prima facie case is not onerous." Texas Dep't of Comt'y Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094, 67 L. Ed.2d 207 (1981). "Generally, '[i]t is the judge, not the jury, who must decide whether [a] plaintiff has satisfied the requirements of McDonnell Douglas's minimal version of prima facie case.'" Gordon v. New York Cty Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) (citing Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993)).

To make a prima facie showing for discriminatory termination or failure to promote or hire, the plaintiff must demonstrate the following elements: (1) she is a member of a protected class; (2) she is qualified for her position; (3) she has suffered adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of race discrimination. See, e.g., Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000) (failure to promote); Gaffney v. Dep't of Info. Tech. and Commc'ns et al., 536 F. Supp. 2d 445, 462 (S.D.N.Y. 2008) (failure to hire); Woods v. Enlarged City Sch. Dist. of Newburgh, 473 F. Supp. 2d 498, 523 (S.D.N.Y. 2007) (discriminatory termination).

13

If the plaintiff succeeds in making this showing, a rebuttable presumption of discrimination arises, and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Texas Dep't of Comt'y Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed.2d 207 (1981). For the case to continue, the plaintiff must then produce "evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Weinstock v. Columbia Univ., 224 F. 3d 33, 42 (2d. Cir. 2000).

### *a.* ***Discriminatory Termination***

Defendant argues that it is entitled to summary judgment because Plaintiff has not made a prima facie showing of discriminatory termination. (Def.'s Mem., pp. 19-21.) In particular, Defendant argues that Plaintiff has not established the fourth element as the circumstances surrounding her termination do not give rise to an inference of race discrimination. (Id.)

This Court agrees. Plaintiff was terminated from the WHCC as a result of three no call/no shows. The WHCC employee handbook states that an employee will be terminated as a result of two unexcused absences. Plaintiff does not deny that she had unexcused absences. Nor does she dispute that she received a copy of the WHCC employee handbook. Moreover, Plaintiff offers no evidence that her termination was based on her race, rather than these unexcused absences. In fact, Plaintiff was asked at her deposition what made her termination discriminatory, and she could not provide any support for her claim:

Q: But I guess I'm still trying to get to why you believe the termination was racially motivated as opposed to being motivated by no-calls/no-shows.

14

A: I don't know.

(Hill Dep., p. 132.)

Because Plaintiff has not demonstrated that the circumstances surrounding her termination give rise to an inference of discrimination, Defendant is entitled to summary judgment on this claim.

### b. *Plaintiff's Claims for Failure to Hire and Promote*

Defendant argues that its summary judgment motion should be granted as to Plaintiff's claims for failure to hire and promote because Plaintiff has not set forth a prima facie case. (Def.'s Mem., pp. 8-19.) In particular, Defendant argues that Plaintiff was not qualified for the positions on which she bid, nor is there any inference of discrimination regarding its hiring decisions.

As an initial matter, 10 of the 31 positions Plaintiff bid on are time-barred. "In New York, an aggrieved employee wishing to bring a claim in federal district court under Title VII . . . must file a complaint with the EEOC within 300 days of the alleged discriminatory conduct." Benjamin v. Health and Hosps. Corp., No. 07-CV-2487, 2009 WL 2959622, at *6 (E.D.N.Y. Sep. 11, 2009) (citing Petrosino v. Bell Atl., 385 F.3d 210, 219 (2d Cir. 2004)). "Claims that accrued more than 300 days prior to a plaintiff's filing of an EEOC complaint are time-barred. . . ." Benjamin, 2009 WL 2959622, at *6 (citing Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998)). Lastly, an action accrues when a plaintiff has notice of the allegedly discriminatory conduct. Benjamin, 2009 WL 2959622, at *6.

Here, Plaintiff submitted her charge to the EEOC on July 9, 2005. Therefore, any bid positions that were filled before September 23, 2004 – 300 days before July 9, 2005 – are time barred. Ten bids were closed before September 23, 2004, they are time barred.

Even were that not the case, Defendant is still entitled to summary judgment. For instance, Plaintiff did not meet the posted qualifications for 17 of the 31 positions. (Docket No. 25, Exs. AA and Z.) As to the remaining 14 positions, Plaintiff has failed to demonstrate any inference of discrimination with respect to Defendant's hiring decisions. As a result, this Court finds that Plaintiff has not set forth a prima facie case.

Plaintiff maintains that she was qualified for the Critical Care RN position as evidenced by the fact that O'Brien granted her an interview. However, it is undisputed that the position required a minimum of twelve months acute medical/surgical experience, Plaintiff had only one month's experience, and the positions were awarded to individuals with the requisite experience. In light of the foregoing undisputed facts, Plaintiff has failed to establish a prima facie case with regard to this position as well. She was not qualified and has not identified any facts demonstrating an inference of discrimination.

Consequently, this Court finds that Defendant is entitled to summary judgment on the failure to hire and promote claims.

### iii. *Plaintiff's Title VII Harassment Claim*

Lastly, Plaintiff alleges that Defendant harassed her on the basis of her race in violation of Title VII. (Compl., ¶ 13.) Her Title VII harassment claim is based upon the same three facts set forth in support of her NYHRL harassment claim. Defendant argues that Plaintiff's harassment claim is barred because she failed to raise it in her DHR or EEOC complaint. (Def.'s Mem., pp. 22-23.) Alternatively, Defendant argues that, even if Plaintiff's claim is not barred, it is still entitled to summary judgment on the merits.

### a. Plaintiff's Harassment Claim is Not Barred

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003). The Second Circuit, however, has recognized that claims not raised with the EEOC may nevertheless be pursued in federal court, provided that such claims are "reasonably related" to those filed with the EEOC. Id. Consequently, a district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are "reasonably related" to the claims filed with the EEOC. Mohan v. Target, No. 04-CV-987, 2009 WL 2957953, at *4 (W.D.N.Y. Sep. 11, 2009) (citing Butts v. City of New York Dept. of Hous. Pres. and Dev., 990 F.2d 1397, 1401 (2d Cir. 1993)).

There are three types of "reasonably related" claims, they include: (1) claims that "fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination;" (2) claims that allege retaliation for filing an EEOC charge; and (3) claims that allege "further incidents of discrimination carried out in the same manner alleged in [the] EEOC charge." Carter v. New Venture Gear, Inc., 310 Fed. Appx. 454, 455 (2d Cir. 2009) (quoting Butts, 990 F.2d at 1402-03). "Conduct in violation of Title VII not alleged in an EEOC charge can reasonably fall within the scope of an EEOC investigation if it involves the same actor or occurs at the same time." Mohan, 2009 WL 2957953, at *4.

Although Plaintiff did not explicitly allege "harassment" in her administrative complaint, this Court finds that her harassment claim is not barred because it is reasonably related to her discrimination claims. For instance, Plaintiff's Title VII claim for harassment

17

stems from the same underlying conduct and is brought against the same Defendant as named in her administrative complaint. Indeed, by effectively arguing that Plaintiff's harassment allegations are sufficiently identifiable with her administrative complaint for purposes of the DHR bar, Defendant has effectively conceded they are reasonably related for purposes of Title VII. Accordingly, this Court finds that Plaintiff's Title VII harassment claim is not barred for failure to exhaust her administrative remedies.

### b.     *Defendant is Nevertheless Entitled to Summary Judgment*

Neither the NYHRL, nor Title VII allow a plaintiff to bring a claim for "harassment." Instead, Plaintiff may bring a claim for a hostile work environment under both statutes, which employ the same standard. EEOC v. Rotary Corp., 297 F. Supp. 2d 643, 661 (N.D.N.Y. 2003) ("Title VII and the New York State Human Rights Law employ an identical standard to determine if the substantive elements of a hostile work environment [] claim have been proven").

To establish a hostile work environment claim, the plaintiff must demonstrate that, (1) the alleged harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) there is a specific basis for imputing the conduct creating the hostile work environment to the employer. Mattison v. Potter, 515 F. Supp. 2d 356, 371 (W.D.N.Y. 2007) (citing Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004)).

This Court finds that summary judgment is warranted here because there is no evidence from which a reasonable jury could conclude that the alleged harassment was sufficiently severe or pervasive. Plaintiff's conclusory allegation that there was a "preconceived notion" about her is without factual support in the record. The write ups

18

Plaintiff received during a brief period in 2004, most of which were quickly expunged, are not sufficient to demonstrate severe or pervasive conduct. Plaintiff's allegation regarding her LPN pay rests upon "several" unknown individuals' statements to her that her pay "should have been more." (Pl. Dep., p. 24.) This unsupported, conclusory assertion is not sufficient to create a question of material fact. And even assuming Plaintiff's pay rate was lower than it should have been, Plaintiff fails to demonstrate how this alleged discrepancy was sufficiently severe or pervasive to create a hostile work environment. She concedes that her pay increased after she brought this matter to the attention of her superiors. (Pl. Dep., p. 24.) In addition to the foregoing deficiencies, there is simply no evidence that any of this alleged conduct was motivated by Plaintiff's race. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic").

. . .

In light of the foregoing, this Court finds that Defendant is entitled to summary judgment on Plaintiff's Title VII claims.

D.   **Plaintiff's Motion to Appoint Counsel**

Plaintiff has also moved for the appointment of counsel. The threshold inquiry for the Court when a plaintiff seeks the appointment of counsel is whether or not the plaintiff's claim "seems likely to be of substance." Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir.

1986). Here, Plaintiff does not meet the threshold inquiry as this case is not one of substance as demonstrated by Defendant's summary judgment motion. Therefore, this motion is denied.

### IV. CONCLUSION

For the reasons stated above, Defendant's summary judgment motion is granted, and Plaintiff's motion to appoint counsel is denied.

### V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Summary Judgment (Docket No. 24) is GRANTED.

FURTHER, that Plaintiff's Motion to Appoint Counsel (Docket No. 32) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.


Dated: October 30, 2009
       Buffalo, New York

                                           /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                    United States District Judge